IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Michael J. Boyd, Sr.,
et al.,

      Plaintiffs,

      v.                  Case No. 2:12-cv-814

Donald R. Smith, et al.,

      Defendants.


OPINION AND ORDER

Plaintiffs Michael J. Boyd, Sr., and Sherry R. Boyd filed this action alleging personal injury and property damage on August 3, 2012, in the Common Pleas Court of Franklin County, Ohio. The named defendants are Fremont Contract Carriers, Inc. ("Fremont")[1]; Donald R. Smith, a former employee of Fremont; Liberty Mutual Fire Insurance Company ("Liberty Mutual"); and Jane and John Doe Defendants 1-10. Plaintiffs allege that on August 14, 2012, a tractor trailer owned by Fremont and operated by Smith on Interstate 70 left the roadway and crashed onto their property located at 1954 Clay Street in Columbus, Ohio. Complaint, ¶¶ 7-8. Plaintiff Michael Boyd allegedly tripped and fell in an effort to get out of the path of the truck and sustained injuries. Complaint, ¶ 9. The crash resulted in a fuel spill on plaintiffs' property. Complaint, ¶ 9.

In Count One of the complaint, plaintiffs allege that Michael Boyd sustained bodily injuries as a result of the reckless and/or negligent actions of Fremont and Smith. Count Two asserts a claim

---

[1] Fremont's name was misspelled in the caption of plaintiffs' complaint as "Freemont." The correct spelling is "Fremont."

for loss of consortium on behalf of Sherry Boyd, the wife of Michael Boyd. Count Three is a claim for damages to plaintiff's residence and real property, including diminution of value. Count Four states that as a result of the fuel spill and remaining fuel residue allegedly caused by the reckless and/or negligent actions of Fremont and Smith, a continuing nuisance exists on the property. Count Five alleges that Fremont failed to adequately train, supervise and control Smith and negligently retained him as an employee. Plaintiffs allege that in failing to adequately train, supervise and control Smith, Fremont acted willfully, wantonly maliciously and with conscious disregard for the safety of others, thereby rendering the defendants liable to plaintiff for punitive damages. Count 6 asserts claims against Jane and John Doe Defendants 1-10 under a variety of theories, including negligence, recklessness, willful and/or wanton conduct, negligence per se, strict liability and vicarious liability. Count 7 is a request for declaratory judgment against Liberty Mutual concerning the subrogation rights of Liberty Mutual, plaintiffs' property insurer, and plaintiffs' obligations to reimburse Liberty Mutual for the sums it has paid on plaintiffs' claims for property damage to their house foundation and driveway.

On September 6, 2012, defendants Fremont and Smith filed a notice of removal of the action to this court based on diversity of citizenship. On September 23, 2013, a suggestion of death was filed as to defendant Smith, indicating that Smith died on September 1, 2013. This matter is now before the court on the motion for partial summary judgment filed on behalf of defendants Fremont and Smith. The motion seeks summary judgment on Counts 1

and 3 through 7.  As to Count 1, the motion seeks summary judgment only on the punitive damages aspect of Michael Boyd's personal injury claim.

I. Summary Judgment Standards

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, by showing that the materials cited do not establish the absence or presence of a genuine dispute, or by demonstrating that an adverse party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1)(A) and (B).  In considering a motion for summary judgment, this court must draw all reasonable inferences and view all evidence in favor of the nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Am. Express Travel Related Servs. Co. v. Kentucky, 641 F.3d 685, 688 (6th Cir. 2011).

The moving party has the burden of proving the absence of a genuine dispute and its entitlement to summary judgment as a matter of law.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party's burden of showing the lack of a genuine dispute can be discharged by showing that the nonmoving party has failed to establish an essential element of his case, for which he bears the

ultimate burden of proof at trial. Id. Once the moving party meets its initial burden, the nonmovant must set forth specific facts showing that there is a genuine dispute for trial. Id. at 322 n. 3. "A dispute is 'genuine' only if based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party." Niemi v. NHK Spring Co., Ltd., 543 F.3d 294, 298 (6th Cir. 2008). A fact is "material" only when it might affect the outcome of the suit under the governing law. Id; Anderson, 477 U.S. at 248.

The nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts[.]" Matsuchita, 475 U.S. at 586. A mere scintilla of evidence is not enough. Anderson, 477 U.S. at 252; Ciminillo v. Streicher, 434 F.3d 461, 464 (6th Cir. 2006). Further, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. See Fed. R. Civ. P. 56(c)(3)(noting that the court "need consider only the cited materials").

II. Motion for Summary Judgment

A. Claims Against Smith

As noted above, on September 23, 2013, a suggestion of death was filed on the record as to defendant Smith. Under Fed. R. Civ. P. 25(a)(1), if a party dies and the claim is not extinguished, the court may order substitution of the proper party upon the filing of a motion for substitution. "If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed." Rule 25(a)(1). Almost

4

six months have passed since the filing of the suggestion of death, and no motion for substitution has been filed. The claims against defendant Smith must be dismissed pursuant to Rule 25(a)(1), and the partial summary judgment motion filed on his behalf is moot.

A. Count Six - Claims Against Jane and John Doe Defendants

Fremont has moved for summary judgment on Count Six, in which plaintiffs assert claims against Jane and John Doe Defendants 1-10. None of these defendants have been identified. Count Six does not allege that the Jane and John Doe defendants are agents or employees of Fremont, nor does it specifically allege a claim against Fremont. The complaint in the instant case was filed on August 3, 2012. In an order filed on February 14, 2014, the magistrate judge noted that the Jane and John Doe defendants in Count Six have never been identified or served with process. See Doc. 36. The order cites Fed. R. Civ. P. 4(m), which provides that if a defendant is not served within 120 days after the complaint is filed, the court must dismiss the action without prejudice pursuant to Fed. R. Civ. P. 4(m), or order that service be made within a specified time. The magistrate judge ordered plaintiffs to show good cause within fourteen days of the date of the order why Jane and John Doe Defendants 1-10 should not be dismisses as parties, or alternatively, why there is good cause for an extension of time to identify those parties and affect service on them. The order advised plaintiffs that if they failed to respond, the John and Jane Doe defendants would be dismissed without prejudice. Plaintiffs filed no response to the show cause order.

Rule 4(m) requires completion of service of process within 120 days after the filing of the complaint. Rule 4(m); Nafziger v.

5

McDermott International, Inc., 467 F.3d 514, 521 (6th Cir. 2006).
Plaintiffs bear the burden of perfecting service of process and
showing that proper service was made. Byrd v. Stone, 94 F.3d 217,
219 (6th Cir. 1996). Plaintiffs also bear the responsibility of
establishing good cause for showing why service was not made within
the time period under the rule. Nafziger, 467 F.3d at 521. Absent
a showing of good cause, the district court "must dismiss the
action without prejudice against that defendant[.]" Rule 4(m).
Plaintiffs failed to respond to the magistrate judge's order, or to
show cause why, nineteen months after the filing of the complaint,
the Jane and John Doe defendants have not been identified and
served. Jane and John Doe Defendants 1-10 are dismissed as parties
without prejudice, and Count Six, which asserts claims against
those defendants, is also dismissed without prejudice. Fremont's
motion for summary judgment on Count Six is moot.

## B. Count Seven - Declaratory Judgment Against Liberty Mutual

Fremont has moved for summary judgment on Count Seven. In
Count Seven, plaintiffs seek declaratory judgment solely against
Liberty Mutual concerning the extent to which plaintiffs are
obligated to reimburse Liberty Mutual for sums it paid to
plaintiffs for their property damage claims in the event that
plaintiffs recover additional sums for property damage in this
case. The record shows that Liberty Mutual paid plaintiffs' claims
for damage to plaintiffs' residence, driveway, and yard. Liberty
Mutual then reached a settlement on those claims with Northland
Insurance Company ("Northland"), Fremont's insurer, and signed a
release in favor of Northland, Fremont, and Smith as to any and all
current and future property damage claims and causes of action

6

arising from the accident on August 14, 2010.  Doc. 25, Exs. D-F.
Liberty Mutual is only named as a defendant in Count Seven.
Liberty Mutual was served by sending a copy of the complaint in
this case by certified mail sent to the address where Liberty
Mutual does business, and has not appeared in this case.  Fremont
is not named as a defendant in Count Seven, nor has Fremont
asserted any cross-claims against Liberty Mutual.

On February 7, 2014, the magistrate judge entered an order
pursuant to S.D. Ohio Local Rule 55.1, which provides in part:

> (a) If a party makes proper service of a pleading seeking
> affirmative relief but, after the time for making a
> response has passed without any response having been
> served and filed, that party does not request the Clerk
> to enter a default, the Court may by written order direct
> the party to show cause why the claims in that pleading
> should not be dismissed for failure to prosecute.

The magistrate judge ordered plaintiffs to show cause within
fourteen days from the date of the order why their claims against
Liberty Mutual should not be dismissed, accompanied, if
appropriate, by a request to enter default and a separate motion
for default judgment.  See Doc. 35.  Plaintiffs were advised that
if they did not respond, Count Seven would be dismissed without
prejudice for failure to prosecute.  Plaintiffs filed no response
to this order.  A copy of the order was mailed to the business
address for Liberty Mutual, and it filed no response to the order.
As plaintiffs have failed to prosecute the claims in Count Seven
against Liberty Mutual, Count Seven is dismissed without prejudice
for failure to prosecute, and Liberty Mutual is dismissed as a
party without prejudice.  Fremont's motion for summary judgment on
Count Seven is moot.

C. Count Five - Negligent Hiring, Supervision, Training and

7

<u>Retention</u>

Fremont has moved for summary judgment on Count Five. In that count, plaintiffs claim that Fremont was negligent in hiring, supervising, training and/or retaining Smith as a driver, and in entrusting its vehicle to him. The elements of a claim of negligent hiring, supervision, training or retention under Ohio law are: (1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act causing the plaintiff's injuries; and (5) the employer's negligence in hiring, supervising, training and/or retaining the employee as the proximate cause of the plaintiff's injuries. <u>Ford v. Brooks</u>, No. 11AP-664 (10th Dist. unreported), 2012 WL 760741 at *6 (Ohio App. Mar. 8, 2012); <u>Zanni v. Stelzer</u>, 174 Ohio App.3d 84, 86-87, 880 N.E.2d 967 (2007); <u>Lehrner v. Safeco Insurance/American States Ins. Co.</u>, 171 Ohio App.3d 570, 583, 872 N.E.2d 295 (2007).

To prove a claim of negligent entrustment of a motor vehicle, a plaintiff must prove: 1) that the motor vehicle was driven with the permission and authority of the owner; 2) that the entrustee was in fact an incompetent driver; and 3) that the owner knew at the time of the entrustment that the entrustee had no driver's license, or that he was incompetent or unqualified to operate the vehicle, or had knowledge of such facts and circumstances as would imply knowledge on the part of the owner of such incompetency. <u>Gulla v. Straus</u>, 154 Ohio St. 193, Syllabus ¶ 5, 93 N.E.2d 662 (1950).

In support of its motion, Fremont has presented the affidavit of Ann Dostal, Vice President of Safety for Fremont. Ms. Dostal

8

stated in her affidavit that Smith had been a truck driver since 1969, and that when he applied to work for Fremont on February 1, 2009, he had no accidents, citations or forfeitures in the preceding three years. Dostal Aff., ¶¶ 9-12. The only accident Smith had while working for Fremont was the accident on August 14, 2010, which is the subject of this case. Dostal Aff., ¶ 13. At the time of his application and during his employment with Fremont, Smith had a valid commercial drivers license. Dostal Aff., ¶ 14. Fremont contacted Smith's prior employers, including United Transport, Inc., where Smith worked from January 1, 2008, to February 21, 2009, and learned that Smith had no moving violations and one log-book violation while working for United Transport, and never tested positive for drugs or alcohol during that time. Dostal Aff., ¶¶ 15-17.

Dostal further stated that Smith passed a physical examination, a drug test, a road test, and a written test during the application process. Dostal Aff., ¶¶ 19-22. Smith also passed a test on cargo securement. Dostal Aff., ¶ 24. After thirty days, Fremont conducted a driver review of Smith that was satisfactory. Dostal Aff., ¶ 23. Smith reviewed the Northland Safe Driving Video Series at orientation on March 2, 2009, and attended regular safety meetings during his time with Fremont. Dostal Aff., ¶¶ 25-26. Smith was required to submit to a random controlled substances test on July 10, 2010, and the result was negative. Dostal Aff., ¶ 27.

On August 14, 2010, Smith had been driving seven hours and fifty-two minutes when the accident occurred. Drivers are permitted to drive up to ten consecutive hours. Dostal Aff., § 28. Fremont was notified of the accident on August 14, 2010, at 6:52

9

p.m.  Dostal Aff., ¶ 30.  Because Smith was cited for the accident, regulations required that he submit to a drug and alcohol test. Dostal Aff., ¶ 31.  Samples were collected at the hospital emergency room where Smith was being treated for cuts to his head and knee.  Dostal Aff., ¶¶ 32, 34.  Michael T. Kelly, a medical review officer, found that the test was positive for opiates. Dostal Aff., ¶ 35.  As a result of this test, Fremont terminated Smith.  Dostal Aff., ¶ 36.  However, Dostal was not then aware that Smith had been treated with narcotic pain medication at the hospital following the accident.  Dostal Aff., ¶ 37.  After reviewing Smith's emergency room records, the medical review officer issued a report dated March 18, 2011, finding that Smith was not under the influence of any drugs or alcohol at the time of the accident.  Dostal Aff., ¶ 40.  Dostal further stated that Smith was never cited by the Columbus Police Department for driving under the influence of drugs or alcohol on August 14, 2010.  Dostal Aff., ¶ 43.  Dostal also had no information indicating that Smith was speeding, driving recklessly, talking on the cell phone, or otherwise distracted at the time of the accident on August 14, 2010.  Dostal Aff., ¶ 42.

As applied to the elements of the negligent hiring, supervising, training and/or retaining claim, the evidence shows that an employment relationship existed between Smith and Fremont, and that the actions of Smith caused injuries to the plaintiffs. However, there is no evidence that Smith was an incompetent driver, that Fremont knew or had any reason to know that Smith was incompetent, or that there was any negligence on the part of Fremont in hiring, supervising, training or retaining Smith which

proximately resulted in plaintiffs' injuries.  Smith had worked as
a truck driver for over forty years.  He had not had an accident in
the three years prior to being hired by Fremont, and he passed
several tests during the application process.  Smith also attended
regular training sessions at Fremont.  The accident on August 14,
2010, was the first and only accident he had while employed by
Fremont, and he was terminated following the accident.  As to the
elements of negligent entrustment, the evidence shows that Smith
drove the truck with Fremont's permission.  However, there is no
evidence that Smith was an incompetent driver, nor is there any
evidence which shows, or from which it could be inferred by a jury,
that Fremont knew or should have known that Smith was incompetent
or unqualified to operate the vehicle.

Plaintiffs did not address the claims in Count Five in their
response to Fremont's motion for partial summary judgment, nor have
they submitted any evidence which disputes the information provided
by Dostal in her affidavit.  The only evidence submitted by
plaintiffs is an unauthenticated copy of a traffic crash report
purportedly completed by a Columbus police officer.  Doc. 28, Ex.
1.  This report, which is neither sworn nor certified, fails to
meet the requirements of Fed.R.Civ.P. 56(e) and is inadmissible.
See Fox v. Michigan State Police Dept., 173 F.App'x 372, 375 (6th
Cir. 2006).  The report indicates that a citation was issued to
Smith for failure to control.  The truck's speed was listed as
sixty-five miles per hour, the posted speed limit.  The weather was
described as "rain."  The reporting officer noted that Smith stated
that his truck hit a puddle of water, which caused him to lose
control of the vehicle.  The vehicle then struck the guard rail and

11

rolled down the embankment.  Even if the report is considered, it contains no information which would support the claims of negligent hiring, supervising, training, retaining or entrustment asserted in Count Five.

No reasonable jury could find that all of the elements of the negligent hiring, supervising, training, retaining or entrustment claims have been satisfied, and no genuine dispute has been shown to exist in that regard.  Fremont is entitled to summary judgment on Count Five.

D. Counts Three and Four – Damage to Property

Fremont seeks summary judgment on Count Three, which alleges damage caused to plaintiffs' real property due to fuel spilled from the truck, and damage to the yard, fencing, driveway, trees, and foundation of the residence.  Fremont has also moved for summary judgment on Count Four, which alleges a claim for nuisance due to spilled fuel residue.  Plaintiffs have not addressed Fremont's motion for summary judgment on Counts Three and Four in their response.

In addition to a claim for damage to real property, plaintiffs have asserted a claim for nuisance.  The term "nuisance" describes a tort consisting of anything wrongfully done or permitted that unreasonably interferes with another in the enjoyment of his property.  Taylor v. City of Cincinnati, 143 Ohio St. 426, 436, 55 N.E.2d 724 (1944).  It includes the wrongful invasion of the use and enjoyment of the property.  Id., 143 Ohio St. at 432. Nuisances may be absolute or qualified.  Natale v. Everflow Eastern, Inc., 195 Ohio App.3d 270,  276, 959 N.E.2d 602 (2011). An absolute nuisance includes: 1) an intentional act resulting in

12

harm; 2) an act involving unlawful conduct causing unintentional harm; or 3) a nonculpable act resulting in accidental harm, for which, because of the hazards involved, absolute liability attaches notwithstanding the absence of fault. Id., 195 Ohio App.3d at 277. A qualified nuisance consists of an act lawfully but negligently done which creates an unreasonable risk of harm, and which in due corse results in injury to another. Id.

Fremont has presented the affidavit of Ann Dostal, Vice President of Safety for Fremont, who stated that Fremont spent $37,000 to clean up the diesel fuel spilled near plaintiffs' property on August 14, 2010. Dostal Aff., ¶ 44. The record also includes a copy of an article concerning plaintiffs' property which appeared on the local 10TV website on March 6, 2011. Doc. 25, Ex. B. According to the article, there had been nine crashes at the top of the hill by plaintiffs' property during the preceding six months, the August 14, 2010, accident at issue in this case being the first of these accidents, and that a hazardous materials crew was called to clean up fuel that leaked as the result of a tractor-trailer cab rolling down the hill into plaintiffs' back yard the previous Saturday.

Fremont has also submitted a report from plaintiffs' expert, Larry M. Dehus, a forensic scientist with Law-Science Technologies, Inc., who evaluated the scene of "repeated truck accidents which have resulted in the contamination of the soil adjacent to Mr. Boyd's property[.]" Doc. 25, Ex. A. In his report dated April 30, 2013, Dehus stated that he conducted a preliminary site inspection at plaintiffs' property, and saw no visible physical evidence of diesel fuel or other contaminants on the property. Dehus stated

13

that extensive cleanup was done after the accidents and that the only way to determine whether or not any contaminants remained was to take multiple core samples in the area and do chemical testing for the presence of diesel fuel.  Dehus noted the presence of cracks in the west basement wall adjacent to the driveway which were likely caused by lateral forces on the foundation from equipment traffic.  Dehus did not review any documents regarding the cleanup of the diesel fuel spills that had occurred.  Doc. 25, Ex. A.

Finally, Fremont has submitted the affidavit of Carol J. Mielke, a technical specialist with Northland regarding the accident of August 14, 2010.  Doc. 25, Ex. 3.  Mielke stated that Shannon Volk of Liberty Mutual sent a letter to Northland dated April 6, 2011, requesting that Northland reimburse Liberty for amounts that Liberty paid to its insured, Michael Boyd, for damage to grass, a tree, the driveway, and the foundation of the house. Mielke Aff., ¶¶ 5-6; Exs. D, F.  Northland agreed to pay $3,636.96 to settle all of Liberty Mutual's claims for reimbursement, and Liberty Mutual accepted that offer.  Mielke Aff., ¶ 7.  Liberty Mutual also signed a property damage release whereby Liberty Mutual, as subrogee of the Boyds, released Northland, Fremont, and Smith from all claims and causes of action which have or may accrue or grow out of "any and all known and unknown, foreseen and unforeseen property damage and the consequences thereof resulting or to result from the occurrence on or about August 14, 2010 in Columbus, OH."  Doc. 25, Ex. E.

Plaintiffs have made no argument and produced no evidence to refute Fremont's arguments and evidence that it is entitled to

summary judgment on plaintiffs' property damages claims alleged in Counts Three and Four.  Under Ohio law, an injured party is entitled to only one satisfaction for an injury.  Morrison v. Fleck, 120 Ohio App.3d 307, 312, 697 N.E.2d 1064 (1997). Plaintiffs' claims for damages to their residence, driveway and yard allegedly resulting from the August 14, 2010, accident have already been paid by Liberty Mutual.  Plaintiffs have not identified any additional property damage which was not covered by their insurance.  In addition, the release signed by Liberty Mutual indicates that plaintiffs surrendered their subrogation rights to Liberty Mutual, which then settled with Northland and released Northland and defendants from any known, unknown and future claims for property damages stemming from the accident.  Plaintiffs do not contest the validity of this release.  Fremont has already paid a substantial sum for cleaning up the diesel spill in plaintiffs' yard.  Larry Dehus, plaintiffs' expert, could find no visible trace of any remaining diesel fuel on plaintiffs' property which would support a continuing nuisance claim, and plaintiffs have presented no other evidence of the continued presence of diesel fuel or any other hazardous material on their property.  No genuine dispute of material fact has been shown to exist in regard to the property damage and nuisance claims alleged in Counts Three and Four, and Fremont is entitled to summary judgment on those claims.[2]

E. Punitive Damages

Fremont argues that it is entitled to summary judgment on plaintiffs' punitive damages claims.  Under Ohio Rev. Code

---

[2]Defendant Smith would also be entitled to summary judgment on these claims.

§2315.21(C)(1), "punitive or exemplary damages are not recoverable from a defendant in question in a tort action unless...(1) [t]he actions or omissions of that defendant demonstrate malice or aggravated or egregious fraud, or that defendant as principal or master knowingly authorized, participated in, or ratified actions or omissions of an agent or servant that so demonstrate." Ohio Rev. Code §2315.21(C)(1); T.P. v. Weiss, 990 N.E.2d 1098, 1103 (Ohio App. 2013). Section 2315.21(C)(1) "incorporated the Supreme Court of Ohio's prior holdings that punitive damages could be awarded against an employer in a tort action only where either (1) the employer's actions directly demonstrated malice, aggravated or egregious fraud, oppression, or insult or (2) where the employer authorized, participated in, or ratified such actions by its employee." Estate of Beavers v. Knapp, 175 Ohio App.3d 758, 779, 889 N.E.2d 181 (2008).

Punitive damages are available upon a finding of actual malice on the part of the employer. See Calmes v. Goodyear Tire & Rubber Co., 61 Ohio St.3d 470, 473, 575 N.E.2d 416 (1991). Actual malice means "(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." Preston v. Murty, 32 Ohio St.3d 334, syllabus, 512 N.E.2d 1174 (1987). In regard to the "conscious disregard" branch of this definition, punitive damages "are intended to punish and deter conduct resulting from a mental state so callous in its disregard for the rights and safety of others that society deems it intolerable." Calmes, 61 Ohio St.3d at 473. Misconduct greater than mere

16

negligence is required. <u>Preston</u>, 32 Ohio St.3d at 335. A possibility or even a simple probability of harm occurring "is not enough as that requirement would place the act in the realm of negligence." <u>Id.</u> at 336. Rather, "[t]he concept requires a finding that the probability of harm occurring is great and that the harm will be substantial." <u>Id.</u>

An employer may also be held liable for punitive damages where the employer authorized or subsequently adopted the employee's wrongful act or where the employer participated in the wrongful conduct. <u>See</u> <u>Knapp</u>, 175 Ohio App.3d at 776 (citing <u>Saberton v. Greenwald</u>, 146 Ohio St. 414, 66 N.E.2d 224 (1946)). Although slight acts of ratification will be sufficient to support a claim for exemplary damages against the employer, ratification is to be inferred only from acts which evince an intention to ratify, and not from acts which may be readily and satisfactorily explained without involving intention to ratify. <u>Saberton</u>, 146 Ohio St. at 430.

This court notes that in <u>Fulwiler v. Schneider</u>, 104 Ohio App.3d 398, 662 N.E.2d 82 (1995), the plaintiff raised as error the trial court's instruction to the jury that it had to find both that the employee was acting in the scope of his employment and that the owners ratified his actions before it could award punitive damages. The First District Court of Appeals stated:

> Generally, acts committed within the scope of employment will be authorized, either expressly or impliedly, by the employer. In that situation, the doctrine of <u>respondeat superior</u> liability will apply and the plaintiff need not prove ratification to hold the employer liable. The plaintiff need prove ratification only where the employee's actions are outside the scope of employment, and if the employer expressly or impliedly ratifies willful and malicious conduct by an employee, an award of

17

punitive damages is proper.

104 Ohio App.3d at 406 (internal citations omitted).  The court then held that jury instruction was erroneous.

The language quoted above may be read as suggesting that punitive damages may be awarded against an employer solely on the ground that the employee was acting within the scope of his employment.  However, as noted by Judge French, writing for the Tenth District Court of Appeals in Knapp, other appellate cases which have referred to this language in Fulwiler have not affirmed punitive damages awards against employers based exclusively on scope of employment.  Knapp, 175 Ohio App.3d at 782.  As the Knapp court observed, the issue before the Fulwiler court was whether the trial court's jury instruction was correct.  Id. at 782-83.  The court in Knapp agreed that a jury is not required to find both that the employee was acting within the scope of his employment and that the employer ratified his conduct, because an employer could be liable for punitive damages due to its ratification of an employee's malicious act committed outside the scope of employment. Id. at 782-83.  However, after an extensive analysis of Ohio Supreme Court precedent concerning employer liability for punitive damages based on the acts of an employee, the Knapp court concluded that "an employer could not be held liable for punitive damages for the acts of its employee merely because the employee undertook actionable conduct while within the scope of his employment." Knapp, 175 Ohio App.3d at 775-78.  Rather, "the Supreme Court of Ohio determined that punitive damages were warranted only where the employer authorized, participated in, or ratified the employee's actionable conduct." Id.

This court agrees with the analysis in <u>Knapp</u>, and concludes that under Ohio law, an employer is not liable for punitive damages merely because the employee committed the alleged acts while acting within the scope of his employment; rather, plaintiff must show either that the employer's own actions demonstrated malice or aggravated or egregious fraud, or that the employer, as principal, knowingly authorized, participated in, or ratified actions or omissions of its employee.

Plaintiffs rely on the police report of the accident, which indicates that Smith was charged with failure to control the vehicle.  Plaintiffs argue that the failure to control a tractor trailer weighing over 26,000 pounds by driving off the roadway indicates a disregard for the rights and safety of others and poses others to a great probability of causing substantial harm. Plaintiffs then contend, with no evidentiary support, that because Smith was acting within the scope of his employment while driving the tractor trailer with Fremont's permission, "Fremont authorized the driving, and subsequent failure to control, by Defendant Smith." Doc. 28, p. 6.

Plaintiffs have produced no evidence concerning what caused the accident, other than the unauthenticated and inadmissible police report.  Even if the report is considered, the facts related in the report would not support a finding of intentional or even reckless disregard for the safety of others.  At most, the report suggests that Smith may have been negligent in losing control of his vehicle.  Mere negligence is not sufficient to support an award of punitive damages. <u>Preston</u>, 32 Ohio St.3d at 335.  The mere fact that an accident occurred, or that a citation for failure to

control was issued to Smith, is not sufficient to indicate reckless conduct rising to the level of malice or conscious disregard. <u>See Meeker v. Graves Lumber Co.</u>, No. 24057 (9th App. Dist. unreported), 2008 WL 2514050 at *3 (Ohio App. June 25, 2008)(pleading "no contest" to a traffic control signal violation following a collision between the snow plow on plaintiff's truck and the semi truck being driven by defendant "does not indicate reckless conduct rising to the level of malice or conscious disregard"). In addition, defendants have presented a news report stating that the August 14, 2010, accident was the first of nine at that location over a period of six months, and that the Ohio Department of Transportation was studying the area. <u>See</u> Doc. 25, Ex. B. This evidence suggests that a defect in the roadway might have been a factor in the crash.

More importantly, there is no evidence that Fremont knowingly authorized, participated in, or ratified Smith's loss of control of the vehicle. Plaintiffs in essence argue that the mere fact that Smith was driving the tractor trailer within the scope of his employment with Fremont was enough to support an award of punitive damages. However, this is not the law of Ohio. An employer cannot not be held liable for punitive damages for the acts of its employee merely because the employee undertook actionable conduct while acting within the scope of his employment. <u>Knapp</u>, 175 Ohio App.3d at 778.

Negligent hiring may constitute evidence of wantonness, oppression, or malicious intent. <u>Knapp</u>, 175 Ohio App.3d at 784 (citing <u>Columbus Ry., Power & Light Co. v. Harrison</u>, 109 Ohio St. 526, 143 N.E.32 (1924)). However, as noted above, plaintiffs have

failed to show that a genuine dispute exists concerning their negligent hiring claim.  Even where a plaintiff proves a claim of negligent hiring, the plaintiff must also establish actual malice before he is entitled to recover punitive damages; mere evidence of negligence in hiring the employee is not enough.  Id.  There is no evidence of actual malice in this case.

There is also no evidence that Fremont ratified Smith's conduct after the accident; rather, Fremont terminated Smith's employment following the accident.  In contrast to an employer who ratifies its employee's conduct by retaining the employee after knowledge of the employee's malicious conduct, the fact that the employer discharged the employee upon learning of his actions may show the employer's disapproval of the employee's conduct and relieve him from liability for exemplary damages.  Knapp, 175 Ohio App.3d at 784 (citing Saberton, 146 Ohio St. at 431).

Plaintiffs have not produced evidence sufficient to support a jury award for punitive damages against Fremont, and no genuine dispute has been demonstrated in that regard.  Fremont is entitled to summary judgment on plaintiffs' punitive damages claims.[3]

III. Conclusion

In accordance with the foregoing, the claims against Donald Smith are dismissed pursuant to Rule 25(a)(1), and the motion for partial summary judgment (Doc. 25) is moot as to Smith.  Count Six is dismissed without prejudice pursuant to Rule 4(m) for failure to perfect service of process, and Jane and John Doe Defendants 1-10

---

[3]Even if the estate of defendant Smith had been substituted as a party, plaintiffs' claims for punitive damages would not have survived his death.  See Firestone v. Galbreath, 895 F.Supp. 917, 933 (S.D.Ohio 1995)(citing Friedman v. Labos, 23 Ohio Law Abs. 217, 1936 WL 2151 at *6 (Ohio App. 1936); Mongold v. Gilbert, 114 Ohio Misc.2d 32, 758 N.E.2d 1245, 1247-49 (Ohio Com. Pl. 2000).

are dismissed without prejudice as parties.  Count Seven is
dismissed without prejudice for failure to prosecute, and Liberty
Mutual is dismissed as a party without prejudice.  Fremont Contract
Carriers' motion for partial summary judgment (Doc. 25) is granted
in part.  Fremont is awarded summary judgment on Counts Three, Four
and Five, and on plaintiffs' claims for punitive damages.
Fremont's motion for partial summary judgment on Counts Six and
Seven is denied as moot.

Date: March 14, 2014          _____s/James L. Graham_____
                              James L. Graham
                              United States District Judge